IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
(AKRON)

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION | : | CASE NO. 5:12-MC-35 |
| Plaintiff, | : | District Court Judge Lioi |
| v. | : | **ORAL ARGUMENT REQUESTED** |
| KEVIN TRUDEAU, et al. | : | **REPLY MEMORANDUM OF NON-PARTY MOVANTS IN SUPPORT OF MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES** |
| Defendants. | : | |
| v. | : | |
| THIRD PARTY | : | |

_____

I.  INTRODUCTION AND SUMMARY

The FTC's Opposition to Motion of Non-Party Movants to Quash Document Subpoena Issued to First Merit Bank ("FTC Response") failed to raise a sufficient link between Movants GIN USA Inc. ("GIN USA"), KT Radio Network Inc. ("KT Radio"), and WebSite Solutions USA Inc. ("WebSite Solutions") (collectively "Non-Party Movants") and Kevin Trudeau ("Trudeau").  Permitting the Federal Trade Commission ("FTC") to obtain the requested information would allow the federal government to run rough-shod over the rights of individual persons and corporations because it harbors mere suspicions that its witch hunt will reveal witches.  As shown below, the FTC's evidentiary and legal basis falls short of the standard of requiring a non-party to provide access to its private banking information.

The FTC improperly produces a summary document regarding the Non-Party Movants without any effort to establish the authenticity or reliability of the underlying documents, which is required under Federal Rules of Evidence 1006.  Even with that

information, however, none of the information is sufficient for the FTC to obtain Non-Party Movants' financial information. Although the FTC has successfully obtained some information from First Merit Bank, NA ("FirstMerit") relating to Trudeau's spouse, Nataliya Babenko, as shown below, the nexus between Trudeau and his own spouse is quite different from any nexus, or lack thereof, between Trudeau and separate third parties, such as Non-Party Movants. Without pointing to any evidence to support a reasonable belief that Trudeau has authority over any of the Non-Party Movants, the FTC requests financial information from FirstMerit regarding the assets of Non-Party Movants, all of which are non-parties to the litigation between Trudeau and the FTC. See February 10, 2012 Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises ("FTC Subpoena"). The FTC incorrectly argues that Trudeau has authority over any of the Non-Party Movants, that its ability to obtain financial information about a judgment debtor's spouse extends to other non-parties, and that Non-Party Movants have no right to know about the FTC's post-judgment discovery regarding Non-Party Movants.

Respondent FTC relies upon Nat'l Union Fire Ins. Co. v. Van Waeyenberghe, 148 F.R.D. 256, 257 (N.D. Ind. 1993), which states that "[i]t is beyond question that a judgment creditor is allowed to ask a judgment debtor for asset and financial information relating to the debtor's spouse or other family members." The case, however, directly supports the Non-Party Movants, and states that "[t]here is authority for restricting discovery requests directed to third parties seeking information about their assets and financial affairs". Id. at 257 (emphasis added).

Trudeau does not have, and never has had, any authority over any of Non-Party Movants or their operations, and the FTC's right to Babenko's financial affairs does not give the FTC any right to Non-Party Movants' private financial information. The FTC also failed to

2

provide notice to Non-Party Movants regarding its subpoena to FirstMerit, which it was required to do. The FTC's failure to serve Non-Party Movants with notice of the FTC Subpoena begs the question of whether the FTC has filed numerous other subpoenas of which Non-Party Movants are unaware. Accordingly, this Court should grant Non-Party Movants' motion to quash and grant to Non-Party Movants the equitable remedy of forcing the FTC to reveal all post-judgment subpoenas and other discovery requests that it has issued in relation to the litigation against Kevin Trudeau, as well as the contents of what it has received, regarding Non-Party Movants.

II.     THE FTC RESPONSE IN OPPOSITION TO NON-PARTY MOVANTS' MOTION TO QUASH DID NOT PROVIDE SUFFICIENT EVIDENCE LINKING KEVIN TRUDEAU TO NON-PARTY MOVANTS' BANK ACCOUNTS

   A.   The FTC's Summary of Purported "Evidence" Regarding Corporate Records of Various Companies is Inadmissible as the Underlying Documents Were Not Authenticated Nor Made Available Prior to Submission of the Summary

As evidentiary support, the FTC attempts to submit into evidence a double hearsay purported summary of "corporate records regarding more than 20 different companies," ostensibly under the voluminous records exception in Rule 1006 of the Federal Rules of Evidence. Declaration of Ronald D. Lewis ("Lewis Decl.") (attached as FTC Attachment A to FTC Response), ¶¶4-8.[1] Rule 1002 of the Federal Rules of Evidence requires that an original writing or recording is required to prove its content. However, Rule 1006 provides an exception as follows:

---

[1] The Declaration of Ronald D. Lewis states that he is making "this declaration in support of the FTC's Response to Motion of Non-Party Global Information Network to Quash Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises." For purposes of this reply memorandum, Non-Party Movants assume that the declaration was prepared for the instant action, and was not made in support of the FTC's Response to Motion of Non-Party Global Information Network to Quash Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises, which was filed in the Southern District of Ohio, captioned Federal Trade Commission v. Trudeau, No. 1:12-MC-022 (S.D. Ohio 2012).

> "The proponent may use a summary, chart, or calculation to prove
> the content of voluminous writings, recordings, or photographs that
> cannot be conveniently examined in court. The proponent <u>must
> make the originals or duplicates available for examination or
> copying, or both, by other parties at a reasonable time and place</u>."

Fed. R. Evid. § 1006. The Sixth Circuit has found that there are several preconditions to admitting a Rule 1006 summary chart:

> "First, the documents (or recordings) or photographs) must be so
> voluminous that they cannot conveniently be examined in court by
> the trier of fact . . . ;
>
> Second, the proponent of the summary must also have made the
> documents available for examination or copying, or both, by other
> parties at [a] reasonable time and place . . .;
>
> Third, and relatedly, commentators and other courts have agreed
> that Rule 1006 requires that the proponent of the summary
> establish that the underlying documents <u>are admissible in evidence</u>.
> Thus, if the underlying documents are hearsay and not admissible
> under any exception, a chart or other summary based on those
> documents is likewise inadmissible. <u>The same principle would
> render inadmissible a summary based on documents that are
> inadmissible for any other reason, such as irrelevancy, unfair
> prejudice, or lack of authenticity</u> . . .;
>
> Fourth, reasonably enough, a summary document must be accurate
> and nonprejudicial. This means first that the information on the
> document summarizes the information contained in the underlying
> documents accurately, correctly, and in a nonmisleading manner.
> Nothing should be lost in the translation . . .; [and]
>
> Fifth and finally, a summary document must be properly
> introduced before it may be admitted into evidence."

<u>United States v. Bray</u>, 139 F.3d 1104, 1109-10 (6th Cir. 1998) (citations and internal quotation marks omitted) (emphasis added). <u>Accord</u>: <u>United States v. Arias-Izquierdo</u>, 449 F.3d 1168 (11th Cir. 2006) (finding that it was error for the district court to admit a summary because Rule 1006 requires that "other parties to the case must be provided the original records upon which the

4

summary is based – or duplicates of those originals – prior to the admission of the summary") (emphasis added).

Here, the FTC improperly proffers a purported summary of various corporate records without following the requirements established in Bray. Summary Document of Corporate Records ("Summary Doc.") (attached as Exhibit 1 to Lewis Decl.). First, the FTC has not made the underlying documents available to the Non-Party Movants or to the Court prior to the admission of the summary. The FTC must make the documents available to the other parties to the instant action, including Non-Party Movants, and to the Court, prior to submitting a summary.[2] Second, the FTC has not shown that the underlying documents are admissible into evidence as those documents have not been authenticated. The FTC incorrectly urges the Court to accept the summary as admissible without analyzing the admissibility of the underlying documents. Third, by not providing the underlying documents prior to the admission of the summary, neither the Court nor the Non-Party Movants can confirm the accuracy of the summary document. The summary document is therefore inadmissible evidence because it is not the original writing or recording under Rule 1002 and does not fall under the voluminous records exception under Rule 1006.

Even if the Court finds the summary document to be admissible, the summary document does not link Trudeau to the Non-Party Movants. The summary document alleges that Trudeau is an officer and director for (1) KT Capital Corporation, (2) International Pool Tour Inc., and (3) TruStar Marketing Corporation, and is also an officer for (1) Trudeau Management

---

[2] This is simply more of the surreptitious activity of the FTC improperly infiltrating Non-Party Movants, refusing to give reasonable notice of the discovery it seeks and bootstrapping its own subjective commentary on several corporate entities to manufacture some nexus to Trudeau that it simply does not have.

5

Inc. and (2) Natural Cures Holdings, Inc.[3] Therefore, the summary document does not prove that Trudeau has authority over the operations of GIN USA, KT Radio, or WebSite Solutions.[4]

> B. Babenko v. FTC Permitted a Judgment Creditor to Obtain Financial Information Regarding the Judgment Debtor's Spouse, But Did Not Permit Discovery of Financial Information Regarding Any Other Non-Parties

The FTC Response cites to Babenko v. FTC, No. 1:12-mc-006, 2012 U.S. Dist. LEXIS 38774 (S.D. Ohio March 22, 2012) to suggest that the result of Nataliya Babenko's motion is somehow applicable to the instant motion to quash filed by Non-Party Movants. FTC Response, p. 6. The court in Babenko found persuasive the fact that Babenko is Trudeau's spouse, that she provided one or more loans to Trudeau, and that she served as president of one of Trudeau's companies. Babenko, 2012 U.S. Dist. LEXIS 38774 at *6-7. The court emphasized the fact that judgment creditors are permitted to ask a judgment debtor for asset and financial information relating to the debtor's spouse. Id. at *7.

A judgment creditor is permitted generally to request financial information regarding the judgment debtor's spouse, but the judgment creditor may not use that same argument to obtain financial information regarding other non-parties. Accordingly, the FTC's ability to obtain financial information from Babenko, because of the spousal relationship between Trudeau and Babenko, does not then lead to the conclusion that the FTC may obtain financial information regarding Non-Party Movants or other non-parties regardless of whether

---

[3] The FTC incorrectly identifies Trudeau Approved Products, Inc. as a Trudeau affiliate. FTC Response, p. 5. According to its summary document, Neil Sant is the officer and director of Trudeau Approved Products Inc. Id. Moreover, upon information and belief, Trudeau is no longer an officer of Natural Cures Holdings, Inc. This must further call into question the lack of reliability of the improper evidentiary "summary" since the summary itself contains obvious errors even if accepted.

[4] According to the summary document, Nataliya Babenko acts as an officer for GIN USA and as an officer and director for KT Radio; Suneil Sant acts as an officer and director for both WebSite Solutions and for KT Radio. Lewis Decl

Babenko may have an affiliation. The FTC improperly conflates the relationship between Trudeau and Babenko into a relationship between Trudeau and Non-Party Movants, which the caselaw does not permit.

>   C.  Non-Party Movants' Financial Information is Irrelevant Because Kevin Trudeau Had No Authority Over Any of the Non-Party Movants and the FTC's Rights to Access Babenko's Financial Information Does Not Extend to Non-Party Movants' Bank Accounts

The FTC primarily argues that the subpoenaed documents are relevant because Trudeau, Babenko, and Suneil Sant have ties to Non-Party Movants. The FTC relies upon caselaw stating that it has the right to obtain financial information regarding Trudeau and regarding Babenko, because of her spousal relationship with Trudeau. Nat'l Union Fire Ins. Co. v. Van Waeyenberghe, 148 F.R.D. 256, 257 (N.D. Ind. 1993) ("It is beyond question that a judgment creditor is allowed to ask a judgment debtor for asset and financial information relating to the debtor's spouse or other family members."). The same case, however, supports Non-Party Movants' argument that although the FTC may request discovery from third parties, such as FirstMerit, regarding Trudeau or Babenko, the FTC may not extend that right to seeking discovery regarding Non-Party Movants' financial information. Id. at 257 ("There is authority for restricting discovery requests directed to third parties seeking information about their assets and financial affairs") (emphasis added); Caisson Corp. v. County West Bldg. Corp., 62 F.R.D. 331, 334 (E.D. Pa. 1974) (stating that third parties "can only be examined about assets of the judgment debtor and cannot be required to disclose their own assets.") (emphasis added) (citing Burak v. Scott, 29 F. Supp. 775 (D.D.C. 1939) and 12 Wright and Miller, Federal Practice and Procedure § 3014 (1973)). The Federal Rules of Civil Procedure do not "give to a judgment creditor any right to subject to the judgment the property of persons other than the judgment debtor, nor to require the disclosure of assets of persons other than the judgment debtor. Burak

7

v. Scott, 29 F. Supp. 775 (D.D.C. 1939) (finding that the respondents, who were not named as parties defendant in the action in which the plaintiff recovered the judgment sought to be enforced, "cannot be required . . . to make disclosure of their individual assets").

Non-Party Movants do not contest the fact that the FTC had the right to obtain financial information from FirstMerit regarding Trudeau's bank account or that they would have the right to seek information regarding Babenko's bank account. In this case, however, the FTC not only requests the financial information regarding Trudeau, but also the financial information of GIN USA, KT Radio, and WebSite Solutions, all of which are unrelated third parties.

The FTC makes conclusory remarks that Trudeau "directly or indirectly controls the [Non-Party Movants], including through his wife Babenko." FTC Response, p. 7. To support these allegations, the FTC argues that (1) the Non-Party Movants were purportedly created post-judgment, (2) the Non-Party Movants allegedly "share the same business address, officers and directors, and incorporator/corporate counsel as all of Trudeau's other companies." Id. Both of these arguments fail to demonstrate how this shows that Trudeau has authority over the operations of Non-Party Movants. The FTC's argument that, according to its summary document, the Non-Party Movants were purportedly created post-judgment does not then link Trudeau to their formation.

The FTC's second argument that, according to its summary document, the Non-Party Movants allegedly share common addresses or officers as Trudeau's other companies also fails to demonstrate how Trudeau has authority over the operations of the Non-Party Movants when Trudeau is not an officer. The logical fallacy of this argument is best seen by reducing it to a simple syllogism: simply because "some of A is B" and "some of A is C" does not support

the conclusion that "some of B is C." The FTC argues that (1) Non-Party Movants are listed as a few of the entities on the inadmissible summary document, (2) some of the entities listed on the inadmissible summary document were allegedly under the authority of Trudeau, and (3) therefore, Non-Party Movants are allegedly under the authority of Trudeau. This is precisely the leap of faith, with insufficient and inadmissible evidence, that the FTC forces upon this Court.

The FTC also argues that Babenko's role with GIN USA and KT Radio and Suneil Sant's role with KT Radio and WebSite Solutions permits the disclosure of Non-Movants' financial information. To support this contention, the FTC states that Babenko is a signatory on GIN USA's subpoenaed account at FirstMerit and provides its summary document in an attempt to establish Babenko and Sant's role for Non-Party Movants. The FTC seemingly suggests that this information alone would make Non-Party Movants' bank accounts fall under the definition of financial information regarding a judgment debtor or a judgment debtor's spouse. This assumption is patently flawed and the FTC's right to obtain information regarding Babenko's financial information does not extend to obtaining financial information regarding Non-Party Movants. Furthermore, the FTC cites no caselaw supporting the notion that organizations purportedly controlled by Suneil Sant should become subject to post-judgment discovery. The FTC provides no link between Trudea and Sant and simply makes conclusory allegations that organizations linked to Sant are somehow also linked to Trudeau.

The FTC is requesting information about unrelated third parties and the FTC Subpoena is not tailored to information regarding Trudeau, the judgment debtor, and Babenko, his spouse. Even after improperly obtaining Non-Party Movants' banking statements from FirstMerit, the FTC has not been able to point to any evidence that would prove that Trudeau had authority over any of Non-Party Movants' accounts. Non-Party Movants' financial information is

both irrelevant and is beyond the scope of the FTC's right to obtain post-judgment discovery from Trudeau and his wife.

    D. The Examples of Online Transfers of Money Does Not Prove that Trudeau Has Authority Over Non-Party Movants' Operations

In order to support the notion that Trudeau has authority over Non-Party Movants, the FTC Response relies upon its allegedly admissible summary document and a spreadsheet that "provides a detailed breakdown of . . . internet/on-line transfers to WebSite Solutions' [FirstMerit] account . . . [and] interent/on-line transfers from WebSite [Solutions'] [FirstMerit] account." Declaration of Thomas P. Van Wazer ("Van Wazer Decl.") (attached as Attachment D to FTC Response), ¶¶7-8. This second summary of information allegedly available through the vast resources of the government suffers from the same fundamental evidentiary flaw as it is simply supported by the ipse dixit statement of the accuracy of the underlying information with no proof of its genuineness or admissibility. Even if the Court finds the proffered evidence to be admissible, the information fails to make a proper connection to Trudeau and Non-Party Movants.

In sum, the FTC argues that funds were transferred (1) from the FirstMerit accounts for GIN USA and KT Radio to the FirstMerit account for WebSite Solutions and (2) from the FirstMerit account for WebSite Solutions to the FirstMerit accounts for Natural Cures Holdings Inc. and Trudeau Approved Products, Inc.[5] FTC Response, pp. 4-5; Van Wazer Decl., ¶¶7-8. The FTC also cites to a wire transfer orchestrated by a common lawyer for the Non-Party

---

[5] As mentioned earlier, the FTC's summary document does not list Trudeau as having any affiliation with Trudeau Approved Products, Inc. Accordingly, Non-Party Movants find this information to be irrelevant to the discussion regarding the transferred funds. The summary document does, however, allege that Trudeau is affiliated with Natural Cures Holdings Inc. Therefore, Non-Party Movants address this information in this Reply Memorandum.

10

Movants from WebSite Solutions to the FTC in order to set up an escrow account. FTC Response, p. 7; December 21, 2011 Letter from Marc J. Lane to Michael Mora (attached as Attachment C to the FTC Response).

Even if the Court finds the evidence to be admissible, this information falls short of establishing that Trudeau has authority over Non-Party Movants' accounts. Non-Party Movants do not deny that Trudeau and Non-Party Movants have a business relationship, in which Trudeau supports and promotes the activities of Non-Party Movants. Pursuant to the business relationships, it is natural for funds to be paid from one business to another. Non-Party Movants fail to understand the significance of the transfer of funds from KT Radio and GIN USA to WebSite Solutions. As none of those transfers involve entities that are allegedly affiliated with Trudeau, pursuant to the summary document, this fails to present any indication that Trudeau has authority over the operations of Non-Party Movants.

With regards to the transfer of funds from WebSite Solutions to Natural Cures Holdings Inc., an alleged Trudeau-affiliated entity, does nothing more than support the notion that they have engaged in business transactions. The FTC's conclusory allegations that Trudeau has authority over the operations and finances of Non-Party Movants are simply not supported by the proffered evidence. Trudeau may support, or even endorse, the business of Non-Party Movants. Trudeau is not, and has never been, an owner, manager, officer or director of any of the Non-Party Movants. Moreover, Trudeau is not a signatory on Non-Party Movants' subpoenaed bank accounts. The transfers of funds to which the FTC cites are too theoretical and remote to support the FTC's conclusion that Trudeau has any authority over any of Non-Party Movants' operations.

E. **Trudeau's Alleged Affiliation with the Global Information Network Foundation is Irrelevant to Trudeau's Purported Ties to Non-Party Movants**

The FTC also makes a conclusory allegation that Non-Party Movants are affiliated with Global Information Network Foundation ("GIN FDN"), an organization over which the FTC argues that Trudeau has authority. First, this argument was raised in the action in the Southern District of Ohio, captioned <u>Federal Trade Commission v. Trudeau</u>, No. 1:12-MC-022 (S.D. Ohio 2012) ("S.D. Ohio Action"), where GIN FDN filed a motion to quash an FTC subpoena issued to Fifth Third Bank. As argued by GIN FDN in the S.D. Ohio Action, Trudeau is not, and has never been, an owner, manager, officer or director of GIN FDN and Trudeau is not a signatory on GIN FDN's bank accounts. Also, the FTC has failed to provide any evidence that Trudeau's loose use of the term "founder" when promoting GIN FDN or being on the GIN FDN Council has any legal significance or proves that Trudeau or GIN Council has any authority over GIN FDN's operations.

Second, the FTC's allegations regarding Trudeau's purported ties to GIN FDN are entirely irrelevant to the instant action. The FTC has not provided any evidence regarding an affiliation between Non-Party Movants and the GIN FDN. Instead, the FTC resorts to making a number of conclusory statements, namely that (1) Trudeau has authority over GIN FDN, (2) Non-Party Movants are affiliated with GIN FDN, and (3) Trudeau has authority over Non-Party Movants. Not only is the FTC mistaken in its statements, but this also is simply another example of the logical fallacy and unsubstantiated conclusions that the FTC forces upon this Court. Simply because Trudeau allegedly has authority over GIN FDN, which has not been proven, and that Non-Party Movants have some affiliation with GIN FDN, which has also not been proven, does not lead to the logical conclusion that Trudeau has authority over Non-Party Movants.

12

III.     NON-PARTY MOVANTS HAVE STANDING, ARE ENTITLED TO NOTICE OF THE SUBPOENA, AND SHOULD RECEIVE ALL POST-JUDGMENT SUBPOENAS AND OTHER DISCOVERY REQUESTS REGARDING NON-PARTY MOVANTS

The FTC argues that Non-Party Movants do not have a right to be served with notice and that Non-Party Movants lack standing to bring this motion to quash as non-parties, when, in fact, the FTC attempted to prevent Non-Party Movants from filing this motion by failing to provide it with proper notice. The court may "quash, modify, or condition a subpoena to protect the person subject to <u>or affected by the subpoena</u> from unnecessary or unduly harmful disclosures of confidential information." Fed. R. Civ. P. 45 advisory committee's note (1991) (emphasis added). "Courts have found that individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution." <u>Arias-Zeballos v. Tan</u>, No. 06 Civ. 1268, 2007 U.S. Dist. LEXIS 5068, *3 (S.D.N.Y. Jan. 24, 2007) (collecting cases). Non-Party Movants have a privacy interest in their financial affairs. Thus, Non-Party Movants have standing to oppose the FTC Subpoena, at least to the extent that it is directed at Non-Party Movants' financial information.

The FTC's argument that the Motion of Non-Party Movants to Quash Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises ("Motion to Quash") is untimely is both circuitous and flawed. The FTC claims that it was not required to give Non-Party Movants notice because it gave Trudeau notice and, at the same time, the FTC asserts that Non-Party Movants received notice because they are allegedly all under the authority of Trudeau. The FTC cannot have it both ways. The lack of an immediate filing prior to the response date of the FTC Subpoena, if anything, supports Non-Party Movants' position that they are in fact <u>not</u> under the authority of Trudeau. If Trudeau had authority over the Non-Party

13

Movants, then he could have assured an immediate response by Non-Party Movants. Non-Party Movants, however, are not under the authority of Trudeau and filed a prompt, and timely, motion to quash upon learning of the FTC Subpoena from other sources.

The FTC argues that no notice was necessary as Non-Party Movants received actual notice and suffered no prejudice. The FTC cites to two cases to support the notion that prejudice must be shown, but the FTC fails to mention that in both of those cases, notice was given. The FTC properly cites to Biocore Med. Techs., Inc. v. Khosrowshahi, 181 F.R.D. 660 (D. Kan. 1998), where the court denied a motion to quash when a party had (1) actual notice of the subpoena and (2) was not prejudiced by not being served. The same case also states there is no prejudice when there is "notice and sufficient time to object." Id. at 667-68. Here, Non-Party Movants received no notice, nor did Non-Party Movants have time to object prior to FirstMerit's production of documents in response to the FTC Subpoena. The FTC Response contains exhibits that show FirstMerit banking information produced to the FTC in response to the FTC Subpoena. Lewis Decl., Exs. 2-4. Non-Party Movants were therefore prejudiced by the FTC's failure to provide notice to Non-Party Movants. Had Non-Party Movants received notice promptly, Non-Party Movants would have been able to submit a request to FirstMerit to refrain from producing documents until the motion to quash would be resolved by the Court.

The same law firm representing Non-Party Movants in this miscellaneous docket action also represents GIN FDN, a St. Kitts and Nevis multi-form foundation, in another one of the FTC's fishing expeditions in the S.D. Ohio Action. Counsel for GIN FDN obtained information that the FTC was targeting the private banking assets of Non-Party Movants as part of the representation in the S.D. Ohio Action and promptly moved to quash the subpoena. Movants in both proceedings have requested, and the FTC has refused to provide, notice of all of

14

its efforts to target companies it "suspects" may have ties to Trudeau. Had the FTC only complied with this reasonable and equitable request, then it could plausibly argue the timeliness of any objection. But, for the FTC to argue that the Motion to Quash was untimely simply because the FTC surmises that Trudeau exercises authority over the Non-Party Movants, is illogical.

The FTC's failure to serve Non-Party Movants with notice of the Subpoena and the FTC's shotgun approach of seeking random discovery of unrelated parties, but with specific account information, begs the question of whether FTC has filed numerous other subpoenas of which Non-Party Movants are unaware. If the FTC has issued other subpoenas to financial institutions, then the FTC is continuing to skirt its obligations of providing Non-Party Movants with notice. Gathering from the FTC's ability to identify Non-Party Movants' account information, it is reasonable to surmise that the FTC has issued other post-judgment subpoenas without serving Non-Party Movants with notice.

IV.       CONCLUSION

For the foregoing reasons, the Court should grant Non-Party Movants' Motion to Quash or, in the alternative, modify the FTC Subpoena so that it is limited to information regarding relevant parties to the litigation between the FTC and Trudeau. This Court should also force the FTC to disclose all post-judgment subpoenas and other discovery requests regarding Non-Party Movants that the FTC has issued in connection with the litigation against Trudeau, as well as their contents, and should prevent the FTC from conducting any further discovery relating to Non-Party Movants in connection with that litigation.

Respectfully submitted,

/s/ Daniel J. Donnellon
Daniel J. Donnellon (0036726)
Kenjiro D. LeCroix (0087922)
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH 45202
Telephone: (513) 632-0308
Telecopier: (513) 632-0319
Email: ddonnellon@ficlaw.com
        klecroix@ficlaw.com

Attorneys for Non-Party Movants
GIN USA Inc., KT Radio Network Inc., and
WebSite Solutions USA Inc.

## CERTIFICATE OF SERVICE

I certify that on the 16th day of April, 2012, I electronically filed the foregoing Reply Memorandum of Non-Party Movants in Support of Motion to Quash Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

Michael Mora
Federal Trade Commission
600 Pennsylvania Ave., NW M-8102B
Washington, DC  20580

Attorney for Plaintiff

/s/ Daniel J. Donnellon
Daniel J. Donnellon

611489.1