# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | CASE NO. 5:12MC35 |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | |
| KEVIN TRUDEAU, et al. | ) | |
| | ) | MEMORANDUM OPINION |
| DEFENDANTS, | ) | AND ORDER |
| | ) | |
| vs. | ) | |
| | ) | |
| GLOBAL INFORMATION NETWORK | ) | |
| USA, INC., et al. | ) | |
| | ) | |
| MOVANTS. | ) | |

Before the Court is a motion to quash filed by non-party movants Global Information Network USA, Inc. ("GIN USA"), KT Radio Network, Inc. ("KT Radio"), and Web Site Solutions USA, Inc. ("Web Site Solutions") (collectively "movants"). (Doc. No. 1.) This matter arises from the issuance of a subpoena by plaintiff Federal Trade Commission ("FTC") to First Merit Bank, NA ("First Merit"), seeking post-judgment production of movants' corporate bank account records pursuant to Fed. R. Civ. P. 69(a). (Doc. No. 1-1.) The FTC's subpoena stems from a civil contempt action against defendant Kevin Trudeau ("Trudeau") in the United States District Court for the Northern District of Illinois, which found Trudeau in contempt of an injunction and ordered him to pay a $37.6 million compensatory sanction. For the reasons that follow, the motion to quash is **DENIED**.

I. BACKGROUND

In September 2007, the FTC initiated civil contempt proceedings in the United States District Court for the Northern District of Illinois, against Trudeau for violating a 2004 permanent injunction. The 2004 injunction prohibited Trudeau "generally from producing or disseminating infomercials . . .[,]" except those related to the "advertising or promotion of publications such as books, provided he '[did] not misrepresent the content of the book.'" *F.T.C. v. Trudeau*, 567 F. Supp. 2d 1016, 1017-18 (N.D. Ill. 2007). On November 16, 2007, the district court held Trudeau in contempt of the injunction for making infomercials that materially misrepresented the contents of a weight loss book he had published.[1] *Id.* at 1023. After further briefing and an evidentiary hearing, the district court ordered Trudeau to pay $37,616,161.00 to the FTC to compensate injured consumers. *F.T.C. v. Trudeau*, No. 03 C 3904, 2008 WL 7874195, at *3 (N.D. Ill. Dec. 11, 2008).

Trudeau appealed the contempt ruling and sanction. The Seventh Circuit affirmed the district court's contempt holding, but reversed the sanction award, finding that the district court had not sufficiently explained how it calculated the $37.6 million sanction. *F.T.C. v. Trudeau*, 579 F.3d 754, 768 (7th Cir. 2009). On remand, the district court again imposed a $37.6 million compensatory sanction and explained in detail how it calculated the sanction. *F.T.C. v. Trudeau*, 708 F. Supp. 2d 711, 716 (N.D. Ill. 2010). The court also granted the FTC's motion to modify the final order to require Trudeau to post a $2 million performance bond or escrow

---

[1]Specifically, Trudeau published a book entitled *The Weight Loss Cure "They" Don't Want You to Know About*, which he marketed through a series of infomercials, proclaiming that the diet described in the book was "easy" and that after completing the regimen described, "you can eat anything you want" and "you'll keep the weight off forever." *Trudeau*, 567 F. Supp. 2d at 1018-20. In fact, the diet regimen required "daily hormone injections, colonics, and a calorie intake restriction requiring a doctor's supervision[]" and prohibited the consumption of a myriad of foods for the rest of the dieter's life. *Trudeau*, 567 F. Supp. 2d at 1022. The district court held that a civil contempt citation was warranted because Trudeau had "misled thousands of consumers." *Id.* at 1023.

account before he could produce or publish any infomercials concerning his publications. *Id.* at 721. Trudeau again appealed and the Seventh Circuit upheld the district court's order. *F.T.C. v. Trudeau*, 662 F.3d 947 (7th Cir. 2011), *petition for cert. filed*, 81 U.S.L.W. 3008 (U.S. June 28, 2012) (No. 11A1005, 12-6).

According to the FTC, Trudeau has failed to comply with the district court's order requiring him to pay the contempt sanction, claiming an inability to pay. (Doc. No. 3 at 31.) In an effort to collect the sanction, the FTC has initiated post-judgment discovery, serving a subpoena upon First Merit on February 10, 2012. The subpoena commands the bank to produce certain documents relating to accounts held by or titled in the name of Trudeau, K.T. Corp. Ltd., International Pool Tour, Inc., KT Capital Corp., Natural Cures Health Institute, TRUCOM, LLC, Trustar Productions, Inc., Trudeau Approved Products, Inc., Alliance Publishing Group, Inc., Natural Cures Holdings, Inc., and movants KT Radio, Web Site Solutions, and GIN USA. (Doc. No. 1-1 at 19.) In response, KT Radio, Web Site Solutions, and GIN USA filed the instant motion to quash the subpoena on March 20, 2012. (Doc. No. 1.)

## II. DISCUSSION

### A. Standard of Review

Fed. R. Civ. P. 45(c)(3)(A) provides, in relevant part, that upon a timely motion, the Court must quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(c)(3)(A)(iii). "A nonparty seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be permitted. *In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. 2010) (citing *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 48 (S.D.N.Y. 1996); *Irons v. Karceski,* 74 F.3d 1262, 1264 (D.C. Cir. 1995)). Generally, "[i]f any documents sought by the subpoena are relevant and are

sought for good cause, then the subpoena should be enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying, or embarrassing." *Waldemar E. Albers Revocable Trust v. Mid–America Energy, Inc.,* Nos. 5:08–cv–274, 3:07–cv–421, 2008 WL 4544438, at *1 (E.D. Ky. Oct. 10, 2008) (citing *Bariteau v. Krane,* 206 F.R.D. 129 (W.D. Ky. 2001)).

**B. Analysis**

Movants seek to quash the FTC subpoena served on First Merit on several grounds. They assert that post-judgment discovery of non-parties is impermissible, that the documents and information requested are irrelevant and unrelated to the pending civil action between the FTC and Trudeau, and that the FTC failed to provide movants with notice of the subpoena. Movants contend the FTC is engaging in a "fishing expedition," is "seeking random discovery of unrelated parties" on the basis of "unreliable evidence, with no foundation," and that the requested discovery could potentially interfere with the non-parties' "orderly business operations." (Doc. No. 1 at 2-3.) Movants seek an order preventing the FTC from conducting further discovery regarding movants and compelling the FTC to reveal all post-judgment subpoenas and other discovery requests it has issued related to its litigation against Trudeau, as well as the contents of information it has received regarding movants.

The FTC argues that the Court should deny the motion for several reasons. First, the FTC asserts that movants lack standing to bring their motion to quash. Second, the FTC argues that the motion is untimely. Finally, the FTC contends that the information sought is highly relevant to post-judgment discovery because Trudeau directly or indirectly controls movants.

*1. Prior Notice and Standing*

The movants argue that they have standing to challenge the subpoena issued to First Merit, that they were entitled to service of notice of the subpoena, and that they have been prejudiced by the production of their financial records by First Merit to the FTC.

Federal Rule of Civil Procedure 45(b)(1) provides that serving a subpoena requires delivering a copy to the *named person*. Further, the rule provides that each *party* must be provided with prior notice of any commanded documents. Fed. R. Civ. P. 45(b)(1). Untimely notice on its own, however, "does not automatically trigger quashing a subpoena without consideration of prejudice to the aggrieved party." *Zinter Handling, Inc. v. Gen. Elec. Co.*, No. 04CV500(GLS/DRH), 2006 WL 3359317, at *2 (N.D.N.Y. Nov. 16, 2006) (citations omitted).

Here, First Merit is the "named person" commanded to produce the requested documents. Further, it is undisputed that movants are not parties to the underlying action. Therefore, nothing in the rules required the FTC to serve movants with the subpoena or give them notice thereof. In any event, even if movants were entitled to notice or service, they have failed to demonstrate any legally cognizable basis upon which they could have challenged the subpoena had they received prior notice and, therefore, have not demonstrated any prejudice by the lack of notice.

"Generally, only the party or person to whom the subpoena is directed has standing to move to quash or otherwise object to a subpoena." *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590 (D. Kan. 2003) (citation omitted). "The Sixth Circuit has observed that "[o]rdinarily, a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought.'" *Johnson v. Guards Mark Sec.*, No. 4:04 CV 2447, 2007 WL 1023309, at *1

5

(N.D. Ohio Mar. 31, 2007) (quoting *Mann v. Univ. of Cincinnati*, Nos. 95-3195, 95-3292, 1997 WL 280188, at *4 (6th Cir. May 27, 1997)).

Here, movants claim a right to privacy in their financial affairs, including their banking records held by First Merit. However, numerous courts, including the Sixth Circuit, have "rejected the idea there is a general constitutional right of nondisclosure of personal information." *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 591 (6th Cir. 2008) (no privacy interest in personal financial affairs) (citing *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 575 (6th Cir. 2002); *State Farm Mut. Ins. Co. v. Policherla*, No. 08-13939, 2009 WL 2170183, at *3 (E.D. Mich. July 20, 2009).[2] Accordingly, movants do not have standing to move to quash the subpoena issued to First Merit, nor can they demonstrated any harm or prejudice flowing from the release of banking records in which they have no privacy interest. Consequently, the motion to quash must be denied on these grounds. Moreover, even if movants had standing to object to the FTC's subpoena, as outlined below, their motion to quash must also be denied because it is untimely and because they have failed to carry their burden of demonstrating that the discovery sought should not be permitted.

---

[2] *See also, e.g., United States v. Gordon*, 247 F.R.D. 509, 510 (E.D.N.C. 2007) (holding bank records are business records of the bank, in which an account holder has no personal right) (citing *Clayton Brokerage Co., Inc. v. Clement,* 87 F.R.D. 569, 571 (D. Md. 1980); *cf. United States v. Miller,* 425 U.S. 435, 442 (1976) (holding that bank customer has no "legitimate 'expectation of privacy' " in the contents of checks, deposit slips, and other banking documents)); *Doe v. United States*, CIV A 06-95, 2007 WL 1521550 (W.D. Pa. May 23, 2007) (no standing to contest validity of subpoena for bank records); *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005), *rev'd on other grounds,*571 F.3d 1143 (11th Cir. 2009); *United States v. Cimino*, 219 F.R.D. 695, 696 (N.D. Fla. 2003) (no Fourth Amendment privacy interest or common law privilege in records held by bank) (collecting cases) (citing *Jenkins v. Rock Hill Local Sch. Dist.,* 513 F.3d 580, 591 (6th Cir. 2008); *Overstreet v. Lexington–Fayette Urban Cnty. Gov't,* 305 F.3d 566, 575 (6th Cir. 2002)).
  Moreover, the Right to Financial Privacy Act, 12 U.S.C. § 3401, *et seq.*, which Congress passed in response to *Miller*, *supra*, does not cover the financial records of movants because movants are corporations, and the RFPA applies only to individuals or partnerships of less than 5 individuals 28 U.S.C. § 3401(4); *Pittsburgh Nat'l Bank v. United States*, 771 F.2d 73, 75 (3d Cir. 1985); *Spa Flying Serv., Inc. v. United States*, 724 F.2d 95, 96 (8th Cir. 1984).

*2. Timeliness*

The FTC urges that movant's motion to quash should also be denied because it is untimely. Rule 45(c)(3)(A) requires that a motion to quash be "timely" filed. "It is well settled that, to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena." *Estate of Ungar v. Palestinian Auth.*, 451 F. Supp. 2d 607, 610 (S.D.N.Y. 2006) (citations omitted). Here, it is undisputed that the movants' motion to quash was filed after the subpoena's return date and after First Merit had already produced documents to the FTC. Thus, the motion is unquestionably untimely. "However, in unusual circumstances and for good cause shown, failure to make timely objection to a subpoena . . . will not bar consideration of objection." *Halawani v. Wolfenbarger*, No. 07-15483, 2008 WL 5188813, at * 4 (E.D. Mich. Dec. 10, 2008).

In determining whether "unusual circumstances" and "good cause" exist, a court should examine whether "(1)the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for [affected person] and counsel for subpoenaing party were in contact concerning the [affected person's] compliance prior to the time the [affected person] challenged legal basis for the subpoena." *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (citations and internal quotation marks omitted).

The Court concludes that the necessary "unusual circumstances" do not exist in this case. First, while movants are non-parties to the litigation between the FTC and Trudeau, there is insufficient information to determine whether they are acting in good faith in this matter. Second, although there is some indication that movants' counsel and counsel for the FTC were in contact concerning this subpoena during the course of similar proceedings in the Southern

7

District of Ohio, yet there is no indication in the record that movants objected to the FTC subpoena prior to the filing of the instant motion to quash. Lastly, as discussed more fully below, movants have not demonstrated that the subpoena is overbroad on its face or that it exceeds the bounds of fair discovery.

> 3. *Relevance*

Finally, the motion to quash must also be denied because movants have failed to demonstrate that the discovery sought should not be permitted. Fed. R. Civ. P. 69 governs the procedure for enforcing a judgment and permits a "judgment creditor . . . [to] obtain discovery from *any* person—including the judgment debtor—as provided in [the Federal] rules . . . ." Fed. R. Civ. P. 69(a)(2) (emphasis added). The scope of post-judgment discovery under the Federal Rules is broad. *United States v. Conces,* 507 F.3d 1028, 1040 (6th Cir. 2007) (citations omitted). A judgment "creditor is entitled to 'utilize the full panoply of federal discovery measures' provided for under federal and state law to obtain information from parties and non-parties alike . . . ." *Andrews v. Raphaelson*, No. 5:09-CV-077-JBC, 2009 WL 1211136, at *3 (E.D. Ky. Apr. 30, 2009) (quoting *Magnaleasing, Inc. v. Staten Island Mall,* 76 F.R.D. 559 (S.D.N.Y. 1977)). The FTC "has apparently elected to proceed in accordance with federal discovery practice, and is thus free to use any of the discovery devices provided in Rules 26 through 37 of the Federal Rules of Civil Procedure." *OHM Res. Recovery Corp. v. Indus. Fuels & Res., Inc.*, No. S90-511, 1991 WL 146234, at *2 (N.D. Ind. July 24, 1991).

Rule 26(b)(1) provides that a party is entitled to take discovery of any matter that is relevant to the claim or defense of any party, even if not admissible itself, if such discovery is reasonably calculated to lead to admissible evidence. Particularly relevant to post-judgment discovery is "information about assets [of parties and non-parties alike,] on which execution can

8

issue or about assets that have been fraudulently transferred." *Andrews*, 2009 WL 1211136, at *3 (quoting *Magnaleasing, Inc.*, 76 F.R.D. at 560 n. 1) (judgment creditor entitled to discover portions of a settlement agreement relating to the existence or transfer of defendants' assets, where it was alleged that the agreement involved improper transfers of such assets))*; see also, OHM Res. Recovery Corp.*, 1991 WL 146234 at *2 ("a judgment creditor [may] obtain discovery not only of the debtor's current assets, but also information relating to past financial transactions which could reasonably lead to the discovery of concealed or fraudulently transferred assets") (collecting cases). While judgment creditors typically cannot compel non-parties to disclose their assets, "[i]nquiry into the assets of third persons is permissible where 'the relationship between [the judgment debtor and third person(s)] is sufficient to raise a reasonable doubt about the bona fides of any transfer of assets between them.'" *Aetna Group USA, Inc. v. AIDCO Int'l, Inc.*, No. 1:11-mc-023, 2011 WL 2295137, at *5 (S.D. Ohio June 8, 2011) (citations omitted) (alterations in original); s*ee also, Credit Lyonnais, S.A. v. SGC International, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998); *Falicia v. Advanced Tenant Servs., Inc.*, 235 F.R.D. 5, 7-8 (D.D.C. 2006).

The FTC asserts that movant's corporate bank records are highly relevant to post judgment discovery because, it asserts, it is evident that Trudeau controls movants, either directly or indirectly. The FTC argues that the following facts support its position: (1) movants were each incorporated post-judgment; (2) Trudeau's wife is the president and director of KTRN, the president of GIN USA, and is a signatory on GIN USA's bank account at First Merit; (3) Suneil Sant, an officer of Trudeau's other companies, is an officer and director of WSU and KTRN and is a signatory on both of those companies' accounts at First Merit; (4) movants share the same business address as Trudeau's other companies and were each incorporated by Trudeau's long-

time corporate counsel;[3] (5) WSU, through its legal counsel, responded to an FTC compliance request on behalf of Trudeau[4] and transferred $2 million to Trudeau's escrow account,[5] which Trudeau established in lieu of posting the $2 million performance bond required by the 2010 contempt order;[6] (6) bank records obtained from First Merit show that, from September to October 2011, movants GIN USA and KTRN transferred over $3 million from their accounts to WSU's account and, during the same period, WSU transferred $1.2 million from its account to the accounts of KTRN and Trudeau "affiliates" Natural Cures Holdings, Inc. and Trudeau Approved Products, Inc.;[7] and (7) Trudeau recently stated in a videotaped radio show that he is a founder and/or member of GIN, which he purportedly referred to as "my club, the Global Information Network."[8]

        Although movants deny that Trudeau is, or ever has never been, an officer, owner, manager or director of movant, and while they indicate that the transfer of funds between themselves and entities allegedly affiliated with Trudeau are nothing more than business transactions, movants' contentions are wholly unsupported by any evidence, such as affidavits or declarations. Rather, the unrefuted facts presented by the FTC are sufficient to raise a reasonable doubt about the relationship between movants and Trudeau and his companies and the bona fides of the transfers between these entities. The record evidence suggests that movants are not business pursuits created totally independent from Trudeau, but may have been created to evade the contempt sanction and conceal Trudeau's assets. *See Falicia*, 235 F.R.D. at 9 (evidence raised "colorable suspicion" regarding relationship between non-party corporations and

---

[3] (Doc. No. 3-1.)
[4] (Doc. No. 3-2.)
[5] (Doc. No. 3-3 at 61.)
[6] (Doc. No. 3-3 at 60.)
[7] (Doc. No. 3-4.)
[8] (*Id.*)

judgment debtor, where, among other things, non-parties were created post-judgment and were controlled by judgment debtor's immediate family members). Consequently, discovery of movants' bank records is relevant to determine if Trudeau has used movants to conceal his assets. Accordingly, because movants have not demonstrated that the discovery sought does not come within the broad scope of relevance defined in Rule 26 or the broad scope of discovery permitted by Rule 69, movants' bank account records are discoverable and their motion to quash is denied for this additional reason.[9]

### III. CONCLUSION

For the foregoing reasons, the motion to quash is **DENIED**. Further, for the same reasons, movants' request that the Court "force" the FTC to disclose all post-judgment subpoenas and other discovery requests regarding movants and prevent the FTC from conducting further discovery related to movants in connection with the Trudeau litigation is also **DENIED**.

**IT IS SO ORDERED**.

Dated: November 8, 2012

                                                  **HONORABLE SARA LIOI**
                                                  **UNITED STATES DISTRICT JUDGE**

---

[9] Movants raise several evidentiary objections to the FTC's submissions, arguing that the FTC has submitted improper summary documents containing hearsay, based upon unauthenticated records, and objecting that movants are unable to confirm the accuracy of the FTC declarants' summaries or the underlying documents. This argument is irrelevant for purposes of the present motion, however, as the FTC's submissions are relevant information that "appears reasonably calculated to lead to discovery of admissible evidence" and "need not [themselves] be admissible. . . ." Fed. R. Civ. P. 26(b)(1).